# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

SECURITY LIFE INSURANCE CO.
OF AMERICA,

                Plaintiff,

v.

**MEMORANDUM OF LAW & ORDER**
Civil File No. 11-1358 (MJD/JJK)

SOUTHWEST REINSURE, INC.,
et al.,

                Defendants.

Daniel L. Grimsrud, John T. Sullivan, Elizabeth C. Borer, Robert L. Meller, Jr., and Sarah E. Crippen, Best & Flanagan LLP, Counsel for Plaintiff Security Life Insurance Company of America.

David M. Schlecker and Paul Walker-Bright, Reed Smith LLP, and Terrance W. Moore, Hellmuth & Johnson, PLLC, Counsel for Defendants Southwest Reinsure, Inc., James B. Smith, and Ideal Insurance Co., Ltd.

David L. Lillehaug and David Gray Waytz, Fredrikson & Byron, PA, Counsel for Defendant Libre Insurance Co., Ltd.

Laura J. Hanson and Erin D. Doran, Meagher & Geer, PLLP, and Daryn E. Rush, Gibbons, PC, Counsel for Defendant INA Trust FSB.

## I.     INTRODUCTION

This matter is before the Court on Defendant Libre Insurance Co.'s Motion to Dismiss Plaintiff's Complaint, or in the Alternative, Stay Pending Arbitration, or in the Further Alternative, Extend Time to Answer and for Discovery [Docket No. 75]; Defendants Southwest Reinsure, Inc.'s, Ideal Insurance Company, Ltd.'s and James B. Smith's Joinder to Defendant Libre Insurance Co.'s Motion to Dismiss, or in the Alternative, Stay Pending Arbitration, or in the Further Alternative, Extend Time to Answer and for Discovery [Docket No. 80]; and Defendant INA Trust FSB's Motion Joining, in Part, to Libre Insurance Company's Motion to Dismiss, or in the Alternative, Stay Pending Arbitration, or in the Further Alternative, Extend Time to Answer and for Discovery [Docket No. 86].  The Court heard oral argument on October 5, 2012.  For the reasons that follow, the Court stays this case pending arbitration between Security Life and Libre, SRI, Ideal, and Smith.

## II.   BACKGROUND

### A.   Factual Background

#### 1.   Parties

Plaintiff Security Life Insurance Company of America ("Security Life") is a Minnesota corporation located in Minnesota.  (Am. Compl. ¶ 1.)

Defendant Southwest Reinsure, Inc. ("SRI") is a New Mexico corporation located in New Mexico, owned by holding company Southwest Re, Inc., which, in turn, is owned by Defendant James B. Smith ("Smith").  (Id. ¶ 2.)  SRI specializes in establishing offshore reinsurance companies incorporated in the Turks and Caicos Islands and therefore subject to lower capitalization requirements than companies based in the United States.  (Id. ¶ 14-16.)  These offshore companies are referred to as "producer-owned reinsurance companies" or "PORCs."  (Id. ¶ 17.)

Defendants Libre Insurance Co., Ltd. ("Libre"); Family Heritage Reinsurance Co., Ltd. ("Family Heritage"); Ideal Insurance Company, Ltd. ("Ideal"); and Sierra Family Life Reinsurance Co., Ltd. ("Sierra") are PORCs incorporated in the Turks and Caicos Islands, with principal places of business in New Mexico, organized, owned and operated by SRI, Southwest Re, Inc.,  and/or Smith.  (Am. Compl. ¶¶ 4-6, 8.)  Libre may have acquired Family Heritage and Sierra, or their business.  (Id. ¶ 7.)  SRI, Smith, and Ideal are collectively referred to as the "Southwest Re Defendants."  Libre, Family Heritage, and Sierra are collectively referred to as the "Reinsurance Companies."

Defendant INA Trust FSB ("INA") was a federally chartered savings bank with its principal place of business in Pennsylvania.  (Am. Compl. ¶ 9.)

### 2.    Reinsurance Agreements

In 1994, Security Life, through its predecessor, Congress Life Insurance Company, entered into a reinsurance agreement with Family Heritage.  (Am. Compl., Ex. B.)  Family Heritage was obligated to reinsure a portion of Security Life's policies in exchange for a share of the premiums that Security Life received on those policies.  (Id.; Am. Compl. ¶ 18.)

In September 1999, Security Life entered into another reinsurance agreement with Family Heritage, with an effective date of August 15, 1997.  (Am. Compl., Ex. C; Am Compl. ¶ 21.)  In September 1997, Security Life entered into a reinsurance agreement with Sierra.  (Am. Compl., Ex. D; Am. Compl. ¶ 24.) Collectively, the three reinsurance agreements are referred to as the "Reinsurance Agreements."

Each of the three Reinsurance Agreements contains an arbitration clause. The 1994 Agreement provides:

> Either party (hereinafter called "Claimant") may demand arbitration to resolve any dispute arising out of this Agreement which cannot be otherwise amicably resolved . . . .  Such arbitration shall be binding upon both parties.  . . .

* * *

Arbitration is the sole remedy for disputes arising under this Agreement.

(Am. Compl., Ex. B, 1994 Agreement, Art. XIII.)

The two 1997 Agreements provide:

Any disputes and differences arising under, out of, or in connection with, or in any manner relating to this Reinsurance Agreement, where an amicable understanding cannot be reached within a reasonable period of time, shall be settled by arbitration. The arbitrators shall regard this Agreement from the standpoint of practical business and equity, rather than strictly law, and are empowered to determine the interpretation of the Agreement.

* * *

The arbitrators shall not be bound by any rules of law.

(Am. Compl., Ex. C, Art. XIV; Am. Compl., Ex. D, Art. XIV.)

In 1994, Security Life and SRI entered into an Insurance Administration Agreement ("Administration Agreement"), in which SRI agreed to "provide the services necessary to accomplish the administration of the insurance covered by [the] Agreement." (Am. Compl., Ex. E.)

Security Life asserts that the parties treated all three Reinsurance Agreements as one unified program. (Am. Compl. ¶ 26.) Under the

Administration Agreement, SRI was Security Life's administrator for the

insurance program.  (Id. ¶ 29.)  All of Security Life's communications regarding

the reinsurance program were through SRI or Smith.  (Id. ¶ 44.)

### 3.    The 2005 Trust Agreement

Plaintiff alleges that the Reinsurance Agreements are not backed by

sufficient security to "cover the Required Reserves as defined by the Reinsurance

Agreements."  (Am. Compl. ¶ 57.)

Plaintiff asserts that Sierra assumed the business of Family Heritage and

that, later, Libre assumed or acquired Sierra.  (Am. Compl. ¶ 47.)   Libre became

the sole reinsurer for the reinsurance program.  (Id. ¶ 48.)  Therefore, Libre

assumed the obligations under the Reinsurance Agreements and provided letters

of credit to Security Life to resolve the deficiencies in security.  (Id. ¶ 60.)

Security Life accepted these letters of credit from Libre for several years.  (Id. ¶

62.)  Later, at SRI's request, Security Life and Defendants agreed to replace the

letters of credit with a trust arrangement.  (Id. ¶ 65.)  SRI agreed to place funds

into a trust account to secure payment of a portion of the Reinsurance

Companies' obligations under the Reinsurance Agreements.  (Id. ¶ 66.)  But

Family Heritage did not have sufficient funds to fund the trust, so SRI arranged

6

to have Ideal fund the trust account with $ 1 million, as the grantor.  (Id. ¶¶ 67-69.)

In 2005, Security Life, INA, and Ideal executed a trust agreement, under which INA was the trustee, Security Life was the beneficiary, and Ideal was the grantor ("2005 Trust Agreement").  (Am. Compl., Ex. F, 2005 Trust Agreement.) The 2005 Trust Agreement required INA to administer a trust account for the sole use and benefit of Security Life.  (Id. § 1(a).)  INA was prohibited from allowing any substitution or withdrawal of any asset from the trust account without a withdrawal notice from Security Life.  (Id. §§ 2(a), (c).)  Additionally, INA was required to notify Ideal and Security Life of each withdrawal, to send quarterly statements, and to follow notice procedures if it resigned as trustee and/or if the trust was terminated.  (Id. §§ 7(a), (e), 9-10.)

The 2005 Trust Agreement does not contain an arbitration provision. Instead, it allows Security Life and INA, and requires Ideal, to bring actions in court in Ohio.  (Id. § 12.)

Plaintiff alleges that, in June 2006, INA transferred all of the funds out of the trust account to Fifth Third Bank, but did not inform Security Life of that transfer.  ([Docket No. 95] Doran Aff., Exs. 1-2; Am. Compl. ¶ 82.)  INA informed

Security Life of the transfer only after Security Life inquired into the status of the trust account, in November 2006.  (Doran Aff., Ex. 2; Am. Compl. ¶ 82.)

In 2011, Security Life discovered that Fifth Third Bank was holding the trust assets under a new trust agreement ("2006 Trust Agreement") to which Security Life was not a party.  (Am. Compl. ¶ 95; Am. Compl., Ex. G.)  The 2006 Trust Agreement does not mention Security Life – which was the beneficiary under the 2005 Trust Agreement.  Instead, Ideal is the grantor, Fifth Third Bank is the trustee, and First Automotive Risk Retention Group, Inc. ("First Automotive") is the beneficiary.  (Id.)  First Automotive is affiliated with SRI – either Smith or Southwest Re, Inc. is the sole shareholder of First Automotive.  (Am. Compl. ¶¶ 95-96.)  In March and April 2011, Smith withdrew the funds from the Fifth Third Trust Account and used them to satisfy obligations of Smith, Ideal or Smith-affiliated companies.  (Am. Compl. ¶¶ 103, 108.)

### B.    Procedural Background

On May 26, 2011, Security Life filed a Complaint against seven Defendants: SRI, Smith, Family Heritage, Ideal, Sierra, Libre, and INA, as well as against unnamed Defendants ABC Corporation, John Does 1-10, XYZ Corporation, and Jane Does 1-10.  It attempted to serve Libre by serving the Minnesota Commissioner of Commerce on May 26, 2011.  (Sullivan Aff., Ex. A.)

8

It also attempted to serve Libre through SRI, on May 31, 2011, but SRI declined to accept service, stating that it was not authorized to accept service for Libre. (Sullivan Aff., Ex. B.)

Plaintiff asserts that, in March 2011, its Chief Financial Officer Daniel Bauer telephoned Dennis McNally, president of Libre, and asked McNally if he knew that Libre was a reinsurer for some portion of Security Life's business. (Sullivan Aff., Ex. L, Bauer Dep. 80-81.)  McNally stated that "that sounded familiar to him."  (Id. 81.)  Bauer asked McNally if he would add assets to Libre in order to meet the obligations to Security Life.  (Id.)  McNally said, "Yeah, that's – that one has been kind of a problem.  I've been talking with Jim Smith . . . ."  (Id.)  Bauer never heard back from Libre or McNally, and Smith told Bauer that his communications with reinsurers should go through Smith.  (Id. 149-50.)  During Smith's deposition, he testified that he did not know who owned Libre. (Sullivan Aff., Ex. C, Smith Dep. 85-87.)  But Smith did testify that, three to six months before his deposition in March 2012, he informed McNally that Security Life had filed a complaint and that Libre was a party.  (Id. 86-88.)

In the summer of 2011, the Southwest Re Defendants and INA filed
motions to dismiss the Complaint.  They did not assert a right to arbitration.  The
Court denied the motion on December 20, 2011.  [Docket No. 48]

On April 4, 2012, Security Life filed an Amended Complaint against the
same Defendants alleging: Count 1: Piercing Corporate Veil as to SRI, Ideal and
the Reinsurance Companies (against Family Heritage, Sierra, Libre, Ideal, SRI,
and Smith); Count 2: Declaratory Judgment – Alter Ego Liability (against Family
Heritage, Sierra, Ideal, and Libre as alter egos of one another and/or of SRI);
Count 3: Breach of Reinsurance Agreements and Funds Withheld Agreement
(against Family Heritage, Sierra, Ideal, Libre, SRI, Smith, XYZ Corporation, and
Jane Does 1-10); Count 4: Breach of 2005 Trust Agreement (against Family
Heritage, Sierra, Ideal, Libre, SRI, Smith, XYZ Corporation, Jane Does 1-10, and
INA); Count 5: Breach of the Administration Agreement (against SRI); Count 6:
Breach of Fiduciary Duty (against Family Heritage, Sierra, Ideal, Libre, SRI,
Smith, XYZ Corporation, and Jane Does 1-10); Count 7: Breach of the Duty of
Good Faith and Fair Dealing (Family Heritage, Sierra, Ideal, Libre, SRI, Smith,
XYZ Corporation, Jane Does 1-10, and INA); Count 8: Fraud (against Family
Heritage, Sierra, Ideal, Libre, SRI, Smith, XYZ Corporation, and Jane Does 1-10):

Count 9: Unjust Enrichment (against Family Heritage, Sierra, Ideal, Libre, SRI, Smith, XYZ Corporation, and Jane Does 1-10): Count 10: Constructive Trust (against Family Heritage, Sierra, Ideal, Libre, SRI, Smith, XYZ Corporation, and Jane Does 1-10); and Count 11: Injunctive Relief (against Family Heritage, Sierra, Ideal, Libre, SRI, Smith, XYZ Corporation, Jane Does 1-10, and INA).

Plaintiff claims that discovery has demonstrated that, in 1994, SRI represented: "Our office will be handling the financial administration of the Company [Libre] as well as any and all regulatory aspects concerning the Company in the Turks & Caicos Islands." (Sullivan Aff., Ex. D; see also Sullivan Aff., Ex. C, Smith Dep. 184.) SRI is a "corporate manager" of Libre. (Sullivan Aff., Ex. F, Southwest Re Defendants' Response to Security Life Interrogatory No. 6.) It was not until March 2012, that SRI finally produced to Security Life contact information for Libre, one Dennis McNally. (Sullivan Aff. ¶ 11; Sullivan Aff., Ex. J.) Plaintiff then served the Amended Complaint on Libre through personal service on McNally on April 17, 2012. (Sullivan Aff., Ex. K.)

The time for Libre to answer was extended and, in June 2012, before Libre's answer to the Amended Complaint was due, Libre's counsel contacted Security Life's counsel and asked whether Security Life would arbitrate.

([Docket No 78] Lillehaug Decl., Ex. A.)  Security Life refused.  (Id.)  Three days

after the refusal, Libre filed this motion to dismiss.

Libre requests that the Court dismiss the claims against it.  In the

alternative, it requests an order staying further proceedings pending arbitration.

In the further alternative, it requests an order extending the time for it to answer,

move, plead, or otherwise respond to the Amended Complaint until 20 days

after the Court rules on this Motion and for an extension of time for discovery.

Defendants SRI, Ideal, and Smith ("the Southwest Re Defendants") join in

Libre's Motion.

Defendant INA joins Libre's motion to the extent that it seeks to stay this

action pending arbitration.  INA admits that Security Life's claims against it are

not arbitrable, but asks that those claims be stayed while Security Life's claims

against Libre and/or SRI, Ideal, and Smith are arbitrated.

## III.   DISCUSSION

### A.    Arbitration Standard

The Federal Arbitration Act ("FAA") provides:

> If any suit or proceeding be brought in any of the courts of the
> United States upon any issue referable to arbitration under an
> agreement in writing for such arbitration, the court in which such
> suit is pending, upon being satisfied that the issue involved in such
> suit or proceeding is referable to arbitration under such an

> agreement, shall on application of one of the parties stay the trial of
> the action until such arbitration has been had in accordance with the
> terms of the agreement, providing the applicant for the stay is not in
> default in proceeding with such arbitration.

9 U.S.C. § 3.  Arbitration provisions in written contracts "shall be valid,

irrevocable, and enforceable."  9 U.S.C. § 2.

"[A]ny doubts concerning the scope of arbitrable issues should be resolved

in favor of arbitration, whether the problem at hand is the construction of the

contract language itself or an allegation of waiver, delay, or a like defense to

arbitrability."  Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1,

24-25 (1983) (footnote omitted).  "[A]n order to arbitrate the particular grievance

should not be denied unless it may be said with positive assurance that the

arbitration clause is not susceptible of an interpretation that covers the asserted

dispute."  AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650

(1986) (citations omitted).  "[A] district court [must] send a claim to arbitration

when presented with a broad arbitration clause . . . as long as the underlying

factual allegations simply touch matters covered by the arbitration provision."

3M Co. v. Amtex Sec., Inc., 542 F.3d 1193, 1199 (8th Cir. 2008) (citations omitted).

In order to determine if a claim is arbitrable, the Court must first

determine whether a valid agreement to arbitrate exists between the parties.

Gannon v. Circuit City Stores, Inc., 262 F.3d 677, 680 (8th Cir. 2001).  Next, the

Court must decide whether the existing dispute falls under the coverage of the

agreement.  Id.

     **B.**     **Libre**

          **1.**     **Whether Libre Has Standing to Enforce the Arbitration
Provisions of the Reinsurance Agreements**

Libre did not sign the Reinsurance Agreements, upon which its claim for

arbitration is based.  However, a nonsignatory can compel arbitration under

three theories: "equitable estoppel, agency, and third-party beneficiary."  Onvoy,

Inc. v. SHAL, LLC, 669 N.W.2d 344, 356 (Minn. 2003).

Security Life admits that it is a party to the Reinsurance Agreements,

which require arbitration.  Security Life admits that it seeks to hold Libre liable

under those same Reinsurance Agreements and asserts that Libre has succeeded

to the rights and obligations of the parties on the other side of those agreements.

At oral argument, Security Life admitted that, if the Court does not find waiver,

then Security Life is obligated to arbitrate with Libre.  The Court agrees that, at a

minimum, equitable estoppel applies to allow Libre to enforce the arbitration

clauses in the Reinsurance Agreements.

A non-signatory to an arbitration agreement may enforce the agreement

against a signatory under an equitable estoppel theory.

> This "equitable estoppel" rule may compel arbitration for non-
> signatories when (a) a signatory's claim "makes reference to or
> presumes the existence of the written agreement" containing the
> arbitration clause; or (b) the claim involves a close relationship
> between signatory and non-signatory parties, raising "allegations of
> substantially interdependent and concerted misconduct."

Dominium Austin Partners, LLC v. Lindquist, No. C5-00-2010, 2001 WL 950085,

at *8 (Minn. Ct. App. Aug. 21, 2001) (quoting Grigson v. Creative Artists Agency,

L.L.C., 210 F.3d 524, 527 (5th Cir. 2000)).  "Equitable estoppel prevents a

signatory from relying on the underlying contract to make his or her claim

against the nonsignatory."  Onvoy, Inc., 669 N.W.2d at 356 (citations omitted).

Here, all of Security Life's claims against Libre are premised on Libre's

assumption of the Reinsurance Agreements or substantially interdependent and

concerted misconduct by Libre and the other Defendants.  Plaintiff has alleged

that Libre assumed all of the obligations under the Reinsurance Agreements.

(Am. Comp. ¶ 129.)   Plaintiff relies on or specifically refers to the existence of the

Reinsurance Agreements in making its claims against Libre.  (See, e.g., id. ¶ 150

("Libre owed Security Life fiduciary duties as reinsurers under the Reinsurance

Agreements . . .").)  Plaintiff also seeks to pierce the corporate veil and combine

15

all defendants, thus alleging substantially interdependent and concerted

misconduct.  (<u>See, e.g.</u>, Am. Compl. ¶ 119 ("There is no meaningful distinction . .

. between Family Heritage, Sierra Family, and Libre . . .").)  Therefore, estoppel is

appropriate.

> **2.     Whether the Arbitration Clauses Cover the Disputes in this Lawsuit**

> In conducting an inquiry into whether claims come within the
> arbitration clause, the district court does not reach the potential
> merits of any claim but construes the clause liberally, resolving any
> doubts in favor of arbitration and granting the motion unless it may
> be said with positive assurance that the arbitration clause is not
> susceptible of an interpretation that covers the asserted dispute.

<u>3M Co. v. Amtex Sec., Inc.</u>, 542 F.3d 1193, 1199 (8th Cir. 2008) (citation omitted).

The relevant arbitration clauses provide that "[a]bitration is the sole

remedy for disputes arising under this Agreement" and arbitration may be

demanded for "any dispute arising out of this Agreement" or require arbitration

for "[a]ny disputes and differences arising under, out of, or in connection with,

or in any manner relating to this Reinsurance Agreement."  These provisions are

similar to "the broadest language the parties could reasonably use to subject their

disputes to [arbitration]."  <u>Fleet Tire Serv. v. Oliver Rubber Co.</u>, 118 F.3d 619, 621

(8th Cir. 1997).  <u>See also</u> <u>Onvoy, Inc.</u>, 669 N.W.2d at 352 (noting that similar

language has been characterized as the "paradigmatic broad arbitration clause").

These broad arbitration provisions in the Reinsurance Agreements cover

Security Life's claims against Libre here.  The provisions clearly cover all claims

based on the Reinsurance Agreements themselves.  Additionally, these types of

"[b]roadly worded arbitration clauses . . . are generally construed to cover tort

suits arising from the same set of operative facts covered by a contract between

the parties to the agreement." <u>CD Partners, LLC v. Grizzle</u>, 424 F.3d 795, 800 (8th

Cir. 2005).  The 2005 Trust Agreement, to which Libre was not a signatory, does

not contain an arbitration clause, but Libre's obligations under that agreement

arise out of its obligations under the Reinsurance Agreements.  (<u>See</u> Am. Compl.

¶ 66.)  Similarly, the Administration Agreement, to which Libre was not a

signatory, was created only to administer a program created by the Reinsurance

Agreements, so any duties Libre had under that agreement stem from its duties

under the Reinsurance Agreements.  (<u>See</u> Am. Compl. ¶¶ 18, 29.)

### 3.    Whether Libre's Right to Arbitration Has Been Waived

The Court concludes that Libre has not waived its right to arbitration.

### a)    Waiver Standard

"[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25 (footnote omitted).  When "arbitration was asserted as an affirmative defense in the answer," the plaintiff is "under a heavy burden to prove waiver and prejudice." Nesslage v. York Sec., Inc., 823 F.2d 231, 234 (8th Cir. 1987).

"A party may be found to have waived its right to arbitration if it: (1) knew of an existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by these inconsistent acts." Lewallen v. Green Tree Servicing, L.L.C., 487 F.3d 1085, 1090 (8th Cir. 2007) (citation omitted).

> A party acts inconsistently with its right to arbitrate if the party
> [s]ubstantially invoke[s] the litigation machinery before asserting its
> arbitration right.  A party substantially invokes the litigation
> machinery when, for example, it files a lawsuit on arbitrable claims,
> engages in extensive discovery, or fails to move to compel
> arbitration and stay litigation in a timely manner.

Id. (citations omitted).

### b)       Whether Libre Knew of Its Right to Arbitration

Plaintiff asserts that Libre knew of its right to arbitration before it was formally served with the Complaint.  It claims that Libre knew of this dispute at least when Plaintiff served other Defendants in May 2011.  However, Security Life points to no case in which a defendant has been deemed to waive its right to arbitration by failing to assert that right in a federal lawsuit before it was even served with the compliant.

### c)       Whether Libre Acted Inconsistently with the Right to Arbitration

Libre promptly exercised its right to arbitration once it was properly served.  Libre was served with the Amended Complaint in April 2012.  Before the deadline to answer, Libre's counsel contacted Security Life's counsel and asked whether Security Life would arbitrate.  Three days after Security Life refused to arbitrate, Libre filed the current motion.

### (1)       Service of the Complaint on Libre

Plaintiff attempted to serve Libre in May 2011 when Plaintiff served the Minnesota Commissioner of Commerce.  However, that service was ineffective.

Under Federal Rule of Civil Procedure 4, a plaintiff may serve a corporation in a manner authorized by the state in which the district court is

located.  Fed. R. Civ. P. 4(e)(1), (h).  Under Minnesota law, a plaintiff may serve a

foreign corporation

> by delivering a copy to an officer or managing agent, or to any other
> agent authorized expressly or impliedly or designated by statute to
> receive service of summons, and if the agent is one authorized or
> designated under statute to receive service any statutory provision
> for the manner of such service shall be complied with.  . . .  [I]f such
> corporation is a foreign corporation and has no such agent in the
> county in which the plaintiff elects to bring the action, then upon
> any such agent of the corporation within the state.

Minn. R. Civ. P. 4.03(c).

Minnesota law permits service of process on the Minnesota Commissioner

of Commerce when a person has filed a consent to such service.  Minn. Stat. §

45.028, subd. 1(b).  No such consent from Libre exists here.  Alternatively:

> When a person, including any nonresident of this state, engages in
> conduct prohibited or made actionable by chapters 45 to 83, 155A,
> 309, and 332, and section 326B.802, or any rule or order under those
> chapters, and the person has not filed a consent to service of process
> under chapters 45 to 83, 155A, 309, and 332, and section 326B.802,
> that conduct is equivalent to an appointment of the commissioner as
> the person's attorney to receive service of process in any
> noncriminal suit, action, or proceeding against the person which is
> based on that conduct and is brought under chapters 45 to 83, 155A,
> 309, and 332, and section 326B.802, or any rule or order under those
> chapters.

Id., subd. 1(a).

20

Thus, a party may only use the Department of Commerce for

nonconsensual service if the complaint alleges violations of particular statutes.

See Oprenchak v. Am. Family Mut. Ins. Co., No. 11–cv–00425 (PJS/TNL), 2012

WL 1247216, at *10-*11 (D. Minn. Mar. 26, 2012 ), adopted by 2012 WL 1253011

(D. Minn. Apr 13, 2012).  "[S]ervice of process is ineffective when a plaintiff does

not 'identify which of the statutes cited in Minn. Stat. § 45.028 serve[s] as a basis

for permitting substitute service.'"  Berkshire Life Ins. Co. of Am. v. Hudelson,

Civ. Nos. 10–691 (RHK/RLE), 10–1007 (RHK/RLE), 2010 WL 2133852, at *1 (D.

Minn. May 27, 2010) (Kyle, J.) (quoting Egge v. Depositors Ins. Co., No. A07–150,

2007 WL 2703137, at *2 (Minn. Ct. App. Sept. 18, 2007)).

Here, Plaintiff's Amended Complaint does not allege any relevant

statutory violations, so the attempted service through the Department of

Commerce was ineffective.  Also, Plaintiff never furnished evidence that it

mailed a certified copy of the original Complaint to Libre's last address; nor did

it file an affidavit of compliance:

> In essence, section 45.028 requires Plaintiff to do three things: (1)
> send a copy of process to the commissioner by certified mail or leave
> at copy at the commissioner's office; (2) "send[ ] notice of the service
> and a copy of the process by certified mail to the defendant . . . at the
> last known address"; and file an affidavit of compliance "on or

before the return day of the process, if any, or within further time as
the court allows." Id.

Oprenchak, 2012 WL 1247216, at *11.  Even if Plaintiff left a copy of the Summons

and Complaint with the Department of Commerce, that act alone does not

constitute service.

The Court notes that Security Life never moved for default judgment after

Libre failed to answer after the claimed service on the Minnesota Commissioner

of Commerce.  Moreover, Security Life later stipulated to an extension of time for

Libre to answer.  (See [Docket No. 70] May 15, 2012 Stipulation between Security

Life and Libre (stipulating that Libre had until June 22, 2012 to answer, move,

plead, or otherwise respond to the Amended Complaint).)

Libre only received official notice of this lawsuit when Plaintiff served it

with the Amended Complaint in April 2012.  And it had no obligation to assert

its right to arbitration based on previous informal knowledge of this lawsuit, if it

had such knowledge.

### (2)    Libre's Participation in this Litigation

Additionally, Libre did not substantially invoke the litigation machinery

before asserting its arbitration rights.

> A party acts inconsistently with its right to arbitrate if the party [s]ubstantially invoke[s] the litigation machinery before asserting its arbitration right.  A party substantially invokes the litigation machinery when, for example, it files a lawsuit on arbitrable claims, engages in extensive discovery, or fails to move to compel arbitration and stay litigation in a timely manner.

Lewallen, 487 F.3d at 1090 (citations omitted).

Libre has not litigated the merits of the case.  By asserting arbitration rights in its first responsive pleading, it has avoided waiver.  See In re 2000 Sugar Beet Crop Ins. Litig., 228 F. Supp. 2d 992, 998 (D. Minn. 2002) ("Because defendants asserted their right to arbitrate in their first responsive pleading, the case is not analogous to those where parties waited months before seeking arbitration, filing dispositive motions in the interim.") (citations omitted).

### d)      Whether Plaintiff Was Prejudiced

Finally, Security Life cannot show that it was prejudiced by Libre's actions.  The discovery and litigation Plaintiff has chosen to undertake against other Defendants was undertaken when Plaintiff knew Libre was not yet a participant in the litigation.

Thus, Libre has not waived its right to arbitration.  The Court concludes that the claims against Libre must be arbitrated.

### 4.    Stay Pending Arbitration

Under the FAA, a Court generally must stay an action pending arbitration.

See 9 U.S.C. § 3; Green v. SuperShuttle Int'l, Inc., 653 F.3d 766, 769 (8th Cir. 2011).

As an exception to this general rule, "district courts may, in their discretion,

dismiss an action rather than stay it where it is clear the entire controversy

between the parties will be resolved by arbitration." Id. at 669-70.  Given the

number of nonarbitrable claims remaining in the Amended Complaint and the

interconnected web among the parties and claims, the Court concludes that this

exception does not apply.  Therefore, the Court stays the claims against Libre

pending arbitration.

### C.    Southwest Re Defendants

The Southwest Re Defendants argue that, based on Libre's right to

arbitration, they are entitled to arbitration themselves, or, at a minimum, to a

stay of the claims against them pending the outcome of the Security Life-Libre

arbitration.

The Southwest Re Defendants have no independent basis for claiming a

right to arbitration.  The Administration Agreement between Security Life and

SRI does not contain an arbitration provision.  The 2005 Trust Agreement

requires that "[a]ny action or proceeding brought by Grantor [Ideal] arising out

24

of or relating to this Agreement must be" brought in the United States District Court for the Southern District of Ohio or in Ohio state court.  (2005 Trust Agreement § 12.)  Any lawsuit by Security Life or INA may be brought in those courts.  (Id.)  Ideal, Security Life, and INA all consent to the jurisdiction of those courts.  (Id.)

The Southwest Re Defendants assert that Security Life is equitably estopped from contesting their right to participate in the Security Life-Libre arbitration.

### 1.    Whether the Southwest Re Defendants Are Entitled to Arbitration Against Security Life under an Estoppel Theory

The Reinsurance Agreements contain broad arbitration provisions requiring arbitration of any disputes "arising out of" or "arising under, out of, or in connection with, or in any manner relating to" the Reinsurance Agreements. These broadly worded arbitration clauses cover tort claims arising from the same set of operative facts as claims for breach of the agreements.  See CD Partners, 424 F.3d at 800.

### a)    Reference to the Reinsurance Agreements

Counts 3, 6, and 7 allege that the Southwest Re Defendants breached contractual and fiduciary duties under the Reinsurance Agreements. (Am. Compl. ¶¶ 130-32, 148-51, 157-58.) These claims fall under the Reinsurance Agreements' arbitrations provisions.

Counts 8 through 11 allege tort and equitable claims that arise from the same set of operative facts. Specifically, Security Life asserts that the trust account was established to secure the reinsurers' obligations under the Reinsurance Agreements. (Id. ¶¶ 65-69.) Defendants committed fraud by transferring the trust account assets from INA to Fifth Third and then out of Fifth Third. (Id. ¶ 161.) Plaintiff further alleges that they were unjustly enriched by the same conduct. (Id. ¶ 170.) And Plaintiff seeks injunctive relief and a constructive trust for this same behavior. (Id. ¶¶ 177-80, 184.)

Count 4 asserts that the Southwest Re Defendants breached the 2005 Trust Agreement. The 2005 Trust Agreement refers to and is premised on the Reinsurance Agreements. (2005 Trust Agreement § 3 (providing that Security Life "shall use and apply any withdrawn Assets . . . for the following purposes only . . . to pay or reimburse [Security Life] for Family Heritage's share under the Reinsurance Agreement").) Plaintiff's rights under the 2005 Trust Agreement

depend on the existence and validity of the Reinsurance Agreements.  Plaintiff,
itself, claims that the 2005 Trust Agreement modified the parties' rights and
obligations under the Reinsurance Agreements.  ([Docket No. 41] Bauer Aff. ¶ 11
("The letter of credit arrangement effectively modified the parties' Reinsurance
Agreement as to the provision of security for required reserves.").)

In Count 5, Plaintiff alleges that SRI breached the Administration
Agreement between SRI and Security Life.  Defendants point out that the two
1997 Reinsurance Agreements state that SRI shall perform the administration of
the reinsured policies.  (1997 Reinsurance Agreements, Art. VI.)  Plaintiff asserts
that SRI breached the Administration Agreement in part by "[f]ail[ing] to fulfill
its contractual and fiduciary duties to Security Life" in connection with handling
the trust account assets.  (Am. Compl. ¶ 144(e).)  Plaintiff appears to allege that
SRI breached the Administration Agreement by failing to maintain the security
to which Plaintiff was entitled under the Reinsurance Agreements.

Overall, Plaintiff's claims presume the existence of the written agreements
containing the arbitration clauses.

### b)    Interdependent and Concerted Misconduct

The Amended Complaint also groups Defendants together for causing

concerted harm to Plaintiff.  Non-signatories to a contract are entitled to enforce

the contract's arbitration provision against a signatory when "the core of the

dispute is the conduct of the [] nonsignatories in fulfilling [a] signatory['s] []

promises."  CD Partners, 424 F.3d at 800.  See also DSAI, Inc. v. Mkt. Direct, LLC,

Civil File No. 06-4545 (MJD/SRN), 2007 WL 551614, at *8 (D. Minn. Feb. 21, 2007)

(holding nonsignatory entitled to arbitrate when plaintiff's complaint "make[s]

no distinction between [the signatory] and [the nonsignatory]").  Here, Security

Life makes no distinction between Libre and the Southwest Re Defendants.

Throughout the Amended Complaint, Plaintiff alleges that all Defendants acted

in concert to harm it.  Almost all of its claims are against "the SRI Defendants,"

defined as "Family Heritage, Sierra Family, Ideal, Libre, SRI, [and] Smith."  (Am.

Compl. ¶ 56.)  Counts 1 and 2 allege that the Reinsurance Companies, including

Libre, are "alter egos" of the Southwest Re Defendants and that they have no

separate corporate existence apart from the Southwest Re Defendants.  Plaintiff

alleges that it only dealt with SRI and Smith in connection with the "Insurance

Program," and that, at all times, SRI and Smith acted on behalf of – and

controlled – the Reinsurers.  (Id. ¶¶ 20, 120, 123.)  The underlying transaction at

issue in all counts is the Insurance Program, the lynchpin of which is the

Reinsurance Agreements.  The claims against the Southwest Re Defendants are

deeply entangled with the claims against Libre, including multiple alter ego-

based claims.

The Court concludes that, under the theory of equitable estoppel, the

claims against the Southwest Re Defendants are subject to arbitration.

### 2.    Whether the Southwest Re Defendants Have Waived Their Right to Arbitration

Security Life argues that, even if the Southwest Re Defendants had a right

to arbitration or a stay pending arbitration of the claims against Libre, they have

now waived that right.

### a)    Knowledge of Right to Arbitration

The Southwest Re Defendants knew of the reinsurer's existing rights to

arbitration by May 2011, when the initial Complaint was served with the relevant

Reinsurance Agreements, and their arbitration provisions, attached.  See Hooper

v. Advance Am., Cash Advance Ctrs. of Mo., Inc., 589 F.3d 917, 921 (8th Cir.

2009).

### b)    Actions Inconsistent with a Right to Arbitration

Plaintiff argues that the Southwest Re Defendants acted inconsistently with a right to arbitration.  The Court agrees that, to some extent, the Southwest Re Defendants acted inconsistently with their right to arbitration by answering the Complaint, filing a partial motion to dismiss, participating in discovery, and delaying before filing this motion.

### c)  Prejudice

The Court concludes that Plaintiff has not shown prejudice such that waiver applies.  "Prejudice results when, <u>inter alia</u>, parties use discovery not available in arbitration, when they litigate substantial issues on the merits, or when compelling arbitration would require a duplication of efforts."  <u>Kelly v. Golden</u>, 352 F.3d 344, 349 (8th Cir. 2003) (citation omitted).

Here, there has been an unfortunate delay in the Southwest Re Defendants' request for arbitration.  Their request, however, is based on Libre's clear right to arbitration, and the delay in Libre's request for arbitration is due to Security Life's failure to either properly serve Libre or move for default judgment against it.  Libre did request arbitration as soon as it was brought into this case.  Even if the Court had not found the claims against the Southwest Re Defendants to be arbitrable, it would have stayed the claims against them during the

pendency of the Libre arbitration given the risk for inconsistent outcomes and

confusion from parallel proceedings based on the fact that the claims against the

Southwest Re Defendants are deeply entangled with the claims against Libre,

including multiple alter ego-based claims.  Thus, the delay in resolution of the

claims against the Southwest Re Defendants would exist regardless of whether

Security Life is forced to arbitrate its claims against them.

Additionally, this case was not scheduled to be trial ready until July 1,

2013.  [Docket Nos. 45, 67]  All discovery in this case was suspended pending the

order on the current motions.  [Docket No. 99]  Plaintiff has not conducted any

discovery with Libre yet.  Arbitration may enable to parties to reach the merits of

this dispute much sooner than continuing this federal lawsuit.  Mere

participation in discovery does not establish prejudice, and, in fact, the evidence

obtained may be usable in arbitration.  See, e.g., Stifel, Nicolaus & Co. Inc. v.

Freeman, 924 F.2d 157, 159 (8th Cir. 1991) ("Prejudice may result from lost

evidence, duplication of efforts, use of discovery methods unavailable in

arbitration, or litigation of substantial issues going to the merits. . . .  Applying

these factors to this case, we conclude [defendants] were not prejudiced; thus,

[plaintiff] did not waive its contractual right to arbitration.  Although

31

[defendant] invoked the judicial process and there was some pretrial litigation

activity, primarily pleadings and discovery, no issues were litigated and the

limited discovery conducted will be usable in arbitration.") (citations omitted).

(See also 1994 Reinsurance Agreement, Art. XIII ("The Federal Rules of Civil

Procedure concerning Discovery shall apply to the arbitration.").)

The Court concludes that, overall, the Southwest Re Defendants have not

waived their right to arbitration.  The Court stays all claims against the

Southwest Re Defendants pending Security Life's arbitration of the claims

against them.

### D.    Whether the Court Should Stay Security Life's Claims Against INA

Finally, the Court stays Security Life's claims against INA pending the

outcome of the Libre arbitration.  As INA admits, the claims against it are not

arbitrable.  However, although the arbitration decision will not be binding on

INA, it may be binding on Security Life, which may affect the outcome in this

case.

### 1.    Standard for Staying Claims Against a Non-arbitrating Party

The Court "has discretion to stay third party litigation [that] involves

common questions of fact that are within the scope of the arbitration agreement."

<u>AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA</u>, 242 F.3d 777, 782 (8th Cir. 2001).

> In a complex, multi-party dispute of this type, issues such as the risk of inconsistent rulings, the extent to which parties will be bound by the arbitrators' decision, and the prejudice that may result from delays must be weighed in determining whether to grant a discretionary stay, and in fashioning the precise contours of any stay.

<u>Id.</u> 783 (citations omitted).

**2.    Discussion**

At its core, this action is tied to the collateral to secure Libre's obligations to Security Life under the Reinsurance Contracts.  Security Life alleges that, without the collateral, it could not take credit for reinsurance and its surplus would be negatively impacted.  (Am. Compl. ¶ 37.)  The Reinsurance Contracts contain specific provisions regarding Libre's collateral.  Security Life agreed to alternative collateral arrangements.  First, collateral was provided through a letter of credit and, later, it was provided through a trust account.  INA was the trustee of the trust account.  Security Life claims that INA breached the trust agreement by, among other things, not providing timely notice of its termination and, as a result, the Southwest Re Defendants were able to withdraw the funds from the account more than four years after the funds were transferred to a new

bank and trustee.  (Id. ¶¶ 81-109, 133-40.)  Plaintiff claims that it has been

damaged by the loss of previously provided collateral as a result of actions by

the Southwest Re Defendants and/or Libre, which were enabled by INA's alleged

breach.  Plaintiff's recovery against INA may be contingent on the outcome of the

claims against the other Defendants.  See Commonwealth Ins. Co. v. Beneficial

Corp., No. 87 Civ. 5056 (CSH), 1987 WL 17951, at *4 (S.D.N.Y. Sept. 29, 1987)

(granting motion to stay pending arbitration by defendants not involved in the

arbitration between reinsurer and ceding company because "if [the reinsurer]

successfully defends against [the ceding company]'s claims in arbitration . . . ,

[the reinsurer] (with the exception of one discrete claim) will have suffered no

damages, and the case at bar is mooted").

   Although the arbitration decision will not be binding on INA, it may be

binding on Plaintiff, which may affect the outcome in this case.   Security Life's

main allegation against INA is that INA failed to notify Security Life of (or,

perhaps, prevent) the termination of the 2005 Trust Agreement and the transfer

of the assets to Fifth Third Bank, where they were then dissipated by other

Defendants.  The amount of damages caused by INA's alleged actions will be

determined by the liability of and damages caused by the other Defendants who

allegedly directed the transfer and dissipated the funds.  If Plaintiff succeeds in

arbitration, it may obtain collateral/surplus relief from Libre as set forth in the

Reinsurance Agreements or a substitute for collateral/surplus relief from the

Southwest Re Defendants.  Without a stay, there is a potential for double

recovery.  Alternatively, if Plaintiff loses in arbitration, then Plaintiff's claims

against INA may fail under collateral estoppel.  See RBC Dain Rauscher Inc. v.

Farmers State Bank of N. Mo., Inc., Case No. 05-6109-CV-SJ-HFS, 2006 U.S. Dist.

LEXIS 40997, at *11 (W.D. Mo. June 20, 2006).

There is a risk of confusion and inconsistent rulings if the Court allows

Security Life's claims against INA to proceed to trial while its claims against

Libre and the Southwest Re Defendants proceed through arbitration.  The Court

acknowledges the delay in this case is unwelcome to Security Life after more

than one year of litigation against INA.  However, Security Life will be able to

pursue its claims against Libre and/or the Southwest Re Defendants promptly

through arbitration.  And the arbitration has the potential to resolve or narrow

the claims against INA.  A stay is warranted.

Accordingly, based upon the files, records, and proceedings herein**, IT IS**

**HEREBY ORDERED**:

1.     Defendant Libre Insurance Co.'s Motion to Dismiss Plaintiff's Complaint, or in the Alternative, Stay Pending Arbitration, or in the Further Alternative, Extend Time to Answer and for Discovery [Docket No. 75] is **GRANTED** as follows: the claims against Libre are **STAYED** pending arbitration of those claims.

2.     Defendants Southwest Reinsure, Inc.'s, Ideal Insurance Company, Ltd.'s and James B. Smith's Joinder to Defendant Libre Insurance Co.'s Motion to Dismiss, or in the Alternative, Stay Pending Arbitration, or in the Further Alternative, Extend Time to Answer and for Discovery [Docket No. 80] is **GRANTED** as follows: the claims against Southwest Reinsure, Inc., Ideal Insurance Company, Ltd., and James B. Smith are **STAYED** pending arbitration of those claims.

3.     Defendant INA Trust FSB's Motion Joining, in Part, to Libre Insurance Company's Motion to Dismiss, or in the Alternative, Stay Pending Arbitration, or in the Further Alternative, Extend Time to Answer and for Discovery [Docket No. 86] is **GRANTED** as follows: the claims against INA Trust FSB are **STAYED** pending the completion of the arbitration between Security Life and Libre Insurance Co Southwest Reinsure, Inc., Ideal Insurance Company, Ltd., and James B. Smith.

Dated:  February 11, 2013          s/ Michael J. Davis
                                   Michael J. Davis
                                   Chief Judge
                                   United States District Court